UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STAR A. BROTT,

        Plaintiff,

v.                                               Case No. 18-C-255

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

**DECISION AND ORDER REVERSING COMMISSIONER'S DECISION**

Plaintiff Star A. Brott filed this action for review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Brott claims that the administrative law judge (ALJ), whose decision became the final decision of the Commissioner, erred in assessing the weight to be accorded to the opinions of Brott's treating psychiatrists, Drs. Fischer and Burney. For the reasons stated below, the Commissioner's decision will be reversed and remanded.

**BACKGROUND**

On January 22, 2010, Brott, who was forty-seven years old at the time, filed an application for a period of disability and disability insurance benefits, alleging disability beginning December 1, 2003, due to bipolar disorder, anxiety, depression, strokes, and stomach problems. R. 167, 338, 343. Brott's date last insured (DLI) was March 31, 2008. R. 322, 1274. Brott's claims were denied initially, on reconsideration, and by an ALJ. R. 169, 192, 199. The Appeals Council remanded the case, and then an ALJ again found that Brott was not disabled. R. 17, 187. The Appeals Council

denied Brott's request for review, and she appealed to this court. R. 1, 1360–63. On May 19, 2016, this court remanded the case for further administrative proceedings upon joint motion of the parties. R. 1365–73. ALJ William Shenkenberg conducted a hearing on December 1, 2016. R. 1271–1339. Brott, who was represented by counsel, her husband, and a vocational expert (VE) testified. R. 1278–1328.

At the time of the December 1, 2016 hearing, Brott was fifty-three years old and lived in a house with her husband, two daughters, and four grandchildren. R. 1278–79. At the hearing, Brott testified that she had a high school education and that she received special education services throughout her schooling due to her severe learning disabilities. R. 1284–86. When asked about her medical conditions during the 2003–2008 period, Brott testified that she had bipolar disorder, panic attacks, seizures, PTSD, paranoia, depression, migraines, a shoulder spur, and a stroke. R. 1289–97. She testified that her panic attacks, depression, and "mental health in general" had worsened since 2008. R. 1290–92. Regarding employment, Brott testified that, prior to 2003, she worked as a bakery worker and certified nursing assistant (CNA), but that she left her work as a CNA after having a stroke, which limited her strength to a point where she felt she could no longer perform the work. R. 1304–06. She further testified that, after 2003, she briefly worked as a deli worker and telephone survey caller, but she left both jobs, one due to anxiety, shortly after starting. R. 1304–05, 1307–08. James Brott, Star Brott's husband, testified that, during the 2003–2008 period, Star had difficulty staying on task, that she suffered from anxiety and memory decline, and that she was short-tempered due to PTSD. R. 1313–15.

In a twenty-page written decision dated February 24, 2017, the ALJ concluded that Brott was not disabled within the meaning of the Social Security Act from her alleged onset date of December

1, 2003, through March 31, 2008, her DLI. R. 1261–62. To reach this conclusion, the ALJ followed the Social Security Administration's five-step sequential evaluation process. At step one, the ALJ determined that Brott had not engaged in substantial gainful activity from December 1, 2003, through March 31, 2008. R. 1246. At step two, the ALJ found that Brott had the following severe impairments: bipolar disorder, PTSD, anxiety, borderline personality disorder, asthma/chronic obstructive pulmonary disease (COPD), status-post wrist surgeries, bilateral shoulder degenerative joint disease, headaches, and obesity. R. 1246. At step three, the ALJ determined that Brott did not have an impairment or combination of impairments that met or medically equaled one of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 1248.

After reviewing the record, the ALJ concluded that Brott had the residual functional capacity (RFC) to

> perform light work as defined in 20 C.F.R. 404.1567(b), subject to the following limitations: no climbing ladders, ropes, or scaffolds; occasional overhead reaching bilaterally; frequent handling and fingering bilaterally; avoid all exposure to irritants, such as fumes, odors, dust, gases, and poorly-ventilated areas; able to understand, remember, and carry out simple instructions and perform simple, routine tasks; work in a low stress job with occasional decisionmaking and occasional changes in the work setting; work with no production rate or pace work; brief and incidental interaction with the public; occasional interaction with coworkers and no tandem tasks; occasional interaction with supervisors; and able to maintain concentration, persistence, and pace in two-hour increments, consistent with normal breaks and lunch, and consistent with unskilled work.

R 1250. With these limitations, the ALJ found at step four that, through her DLI, Brott was unable to perform her past relevant work as a nurse assistant and baker helper. R. 1259. At step five, however, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Brott could have performed through her DLI, such as inspector, routing clerk, and

merchandise marker. R. 1259–60. After the ALJ's decision became final, R. 1241, Brott commenced this action for judicial review.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the Social Security Administration's (SSA) rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Brott claims that the ALJ failed to properly weigh the opinions of her treating psychiatrists, Drs. Fischer and Burney. Under the regulations in effect at the time of the ALJ's decision, the ALJ

4

must give a treating source's medical opinion on the nature and severity of the claimant's impairments "controlling weight" if the opinion "is well-supported by the medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. If an ALJ gives the treating source's medical opinion lesser weight, he must articulate "good reasons" for doing so. § 404.1527(c)(2). In such a case, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" in determining the weight to give the medical opinion. *Id.*; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

On May 21, 2007, Dr. Fischer completed a psychiatric questionnaire regarding Brott. R. 476–78. In this questionnaire, Dr. Fischer noted that he saw Brott once or twice per month between January 22 and April 16, 2007. R. 476. Regarding Brott's orientation and affect, Dr. Fischer described Brott as well-oriented with labile affect that drifted between sad, tearful, and anxious. *Id.* Dr. Fischer described Brott's memory as generally intact and noted that her concentration was at times impaired by flashbacks and painful memories. *Id.* Dr. Fischer further noted that Brott's thought processes were intact and that she would occasionally experience auditory hallucinations and paranoia related to her father. *Id.* Dr. Fischer described Brott's personal habits (i.e. dress, grooming, hygiene) as generally intact, and he noted that she would at times require assistance from family to leave home due to anxiety and paranoia, but that her ability to leave home was improving. R. 477. Dr. Fischer noted that Brott had depressive symptoms half the days of each month for the past three years and that symptoms were at times severe. *Id.* Dr. Fischer observed

5

that Brott's ability to relate to others was superficially okay but fluctuated. R. 478. Lastly, Dr. Fischer noted that Brott was responding well to treatment, that her prognosis was fair to good with continued psychotherapy; that she had a good ability to understand, carry out, and remember instructions; and that she was moderately to severely impaired in her ability to respond appropriately to supervision, coworkers, and routine work pressures and changes in a work setting. R. 478.

On February 10, 2011, Dr. Burney completed anxiety and depression RFC reports on Brott. In these reports, Dr. Burney noted that Brott exhibited anxiety accompanied by motor tension, autonomic hyperactivity, apprehensive expectation, vigilance and scanning; persistent irrational fear of a specific object, activity, or situation that results in a compelling desire to avoid the dreaded object, activity, or situation; recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week; and recurrent and intrusive recollections of a traumatic experience that are a source of marked distress. R. 911. Dr. Burney wrote that Brott had a combination of severe mood problems, that he strongly suspected that Brott had bipolar disorder, with most mood problems related to depression, and that Brott had a personality disorder with strong borderline tendencies and a long history of sedative hypnotic abuse that makes treatment very challenging. R. 912.

Dr. Burney further observed that Brott experienced symptoms of bipolar and depressive syndromes, including anhedonia or pervasive loss of interest in almost all activities, appetite disturbances with weight change, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and suicidal thoughts. R. 914–15. Dr. Burney also noted that Brott suffered from manic syndrome, characterized by flight of ideas, variable decreased need to sleep, and easy distractability. R. 914. Based on his

6

observations of Brott's mental conditions, Dr. Burney indicated that Brott had extreme functional limitations in activities of daily living, social functioning, concentration, persistence, or pace, and continual episodes of deterioration or decompensation in work or work-like settings. R. 913, 916.

Before assessing Drs. Fischer and Burney's opinions, the ALJ set forth the proper legal standard he was to follow, including the factors he was to consider. R. 1257–58. The ALJ assigned partial weight to Dr. Fischer's opinion and little weight to Dr. Burney's opinion. Regarding Dr. Fischer's opinion, the ALJ explained that the record warranted some limitations in Brott's ability to interact with the public and coworkers but "[did] not support a finding of severe limitation during the relevant time period." R. 1258. Regarding Dr. Burney's opinion, the ALJ noted that Dr. Burney "provided his opinion several years after the date last insured and did not indicate to what time period his assessment related." *Id.* The ALJ further noted that, "although both physicians had the opportunity to treat the claimant for her mental health complaints, their assessments are unsupported by objective signs and findings in the preponderance of the record for the time period at issue." *Id.* Specifically, the ALJ highlighted several records showing that Brott was responding well to treatment and noted that such records "show few objective findings and primarily document the claimant's subjective complaints." *Id.* According to these records, Brott's symptoms showed significant improvement after only a few months of treatment in mid-2005 and early-2006, and despite a few exacerbations, with adjustments to her medications and regular treatment, in early-2008. The ALJ observed that Dr. Burney himself reported that Brott seemed to be doing "quite well" and that "he documented an essentially normal mental status examination." R. 876–77, 1255, 1258. Lastly, the ALJ indicated that Brott's lack of treatment appeared to result from inconsistent attendance rather than financial or insurance issues. R. 1258.

Under the law of this circuit, the ALJ failed to provide good reasons for giving Drs. Fischer and Burney's opinions lesser weight. First, although the ALJ correctly observed that the timing of Dr. Burney's opinion could cut against its weight given that the relevant period for Brott's disability was December 2003 to March 2008, that Brott testified that her mental health worsened since 2008, R. 1290–92, and that Dr. Burney only began treating Brott three months before the end of her insured period, R. 536–39, the ALJ could have, but did not, seek clarification from Dr. Burney about the period to which his observations pertained. *See Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) ("Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record."); *see also* 20 C.F.R. § 404.1520b(b) (setting forth options for considering evidence, including the option of recontacting a medical source); *but cf. Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018) (holding that an ALJ did not need to recontact a physician to explain inconsistencies where the record contained adequate information for the ALJ to render a decision). Indeed, Dr. Burney does not state that his opinion fails to encompass his pre-DLI treatment of Brott; while unlikely, it may be that Dr. Burney's opinion focused primarily or even exclusively on pre-DLI treatment. The ALJ was too quick to assume, without clarification, that Dr. Burney's opinion was of little relevance to the period at issue, especially since it was in large part consistent with that of Dr. Fischer.

Second, the ALJ improperly discounted Drs. Burney and Fischer's opinions as unsupported by objective signs and findings in the record merely because Brott showed relatively good response to mental health treatment and medications on several occasions during the time period at issue.

8

The Seventh Circuit has observed that "a person who suffers from a mental illness will have better and worse days, so a snapshot of a single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citations omitted). While relevant, evidence of three "good days" over three years without mention of treatment records before, between, and after those moments is an insufficient basis for discounting treating source opinions, especially when it comes to mental illness. *See id.*; *Mischler v. Berryhill*, No. 18-1523, __ F. App'x __, 2019 WL 1299948, at *4 (7th Cir. Mar. 20, 2019). To be fair, the ALJ noted that Brott experienced "a few exacerbations" during that time period, R. 1258, but the ALJ did not explain why those exacerbations were irrelevant or otherwise deserving of little weight. In fact, Brott had three separate in-patient hospitalizations during the relevant time period and at least one suicide attempt. The fact that she seemed to be doing better or even well on office visits is not inconsistent with her treating physicians' opinions that she lacks the capacity to sustain work-related activities for eight hours a day, five days a week on a sustained basis. In short, to avoid the criticism of "cherry-picking" evidence, the ALJ cannot rely on the "good days" and cursorily dismiss the "bad days" without adequate explanation. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Additionally, although the ALJ properly articulated the factors he was to follow in assessing the weight to assign Drs. Fischer and Burney's opinions, he failed to consider several of the factors, such as the length, nature, and extent of the treatment relationships; the frequency of examination; and the specialization of Drs. Fischer and Burney. *See* 20 C.F.R. § 404.1527(c)(2) and (5). To the extent that the ALJ justified assigning less than controlling weight to Drs. Fischer and Burney's opinions based on the supportability and consistency factors, § 404.1527(c)(3)–(4), he did not articulate adequate reasons.

9

The principal reason the ALJ cited for giving the opinions of Brott's treating physicians lesser weight appears to be that "their assessments are unsupported by objective signs and findings in the preponderance of the record for the time period at issue." R. 1258. As the ALJ explained, their treatment notes "show few objective findings and primarily document the claimant's subjective complaints." *Id.* In light of the factors the ALJ is instructed to consider in weighing the opinions of medical sources, this may seem a legitimate reason to discount the opinions of Drs. Fischer and Burney. According to the regulations, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). The regulations define medical "signs" as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

§ 404.1502(g). The term "laboratory findings" means:

> one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests.

§ 404.1502(c). Symptoms, on the other hand, are defined as "your own description of your physical or mental impairment." § 404.1502(i). Given these definitions, the ALJ can be forgiven for thinking that the fact that Brott's psychiatrists seemed to base their opinions on Brott's own description of what she was experiencing was a reason to discount the weight of those opinions.

The Seventh Circuit has made clear, however, that in the mental health realm, the distinction between symptoms and signs breaks down. In *Mischler*, the court explained:

> The Commissioner argues that Dr. Dennison's opinion was not supported by medical evidence because she simply "noted and recorded" Mischler's complaints. As the Commissioner puts it, "the act of transcription does not transform her subjective allegations into medical evidence." We do not find this observation helpful. A psychiatrist does not merely transcribe a patient's subjective statements. Mental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of her professional expertise. *See Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). Further, the trained physician, not the ALJ, is better positioned to discern "true" complaints from exaggerated ones. *See id.*

2019 WL 1299948, at *5. Under the law of this circuit, it thus appears that a claimant's description of her symptoms, unless explicitly rejected by her treating physician, are a sufficient basis to require the physician's opinion be given controlling weight under 20 C.F.R. § 404.1527(a)(2). As the court explained in *Adaire v. Colvin*, in criticizing the ALJ's decision to discount the opinion of the plaintiff's treating physician because neither he nor a therapist had witnessed the panic attacks on which it was based:

> That was no basis for disbelieving that he experiences panic attacks. He said he did, the psychologist and the therapist believed him, and the administrative law judge had no basis for disbelieving them. The logic of her remark is that nothing an applicant says should be believed; disability determinations should be based entirely on the results of medical tests.

778 F.3d 685, 688 (7th Cir. 2015).

To a large extent, these holdings reflect the very nature of mental impairments and the limitations of the psychiatric profession. The plain fact is that there are no laboratory tests that can detect the presence or measure the extent of many if not most mental impairments. And in most cases, psychologists and psychiatrists are not in a position to "medically describe and evaluate"

11

"observable facts" that show specific "psychological abnormalities," such as "abnormalities of behavior, mood, thought, memory, orientation, development, or perception." § 404.1502(g). Post-traumatic stress disorder and depression are particularly dependent on a patient's self report:

> Many lawyers assume, erroneously, that diagnoses of mental disorder are based on some proper combination of self report and the psychiatrist's examination. However, many diagnoses either cannot be validated by objective testing or are so difficult to validate that routine clinical practice relies solely on self report. For example, if a person claims to have post traumatic stress disorder, objective validation of the assertion is difficult, if not impossible. Can we confirm whether he was tortured twenty years ago and whether he has nightmares every time he goes to sleep? Similarly, a diagnosis of depression is almost wholly dependent on the individual's self report. For such diagnoses, the ethical psychiatrist should state not only his or her diagnostic conclusion but should also clarify that the conclusion relies heavily on the self report of a potentially biased evaluee and cannot be supported by any objective measures. The deceptive psychiatrist, seeking to have his or her opinion accepted as gospel (and not subjected to the rigors of annoying cross-examination), will delete such clarification.

Ansar M. Haroun, M.D., & Grant H. Morris, *Weaving a Tangled Web: The Deceptions of Psychiatrists*, 10 J. CONTEMP. LEGAL ISSUES 227, 237 (1999).

In any event, for the reasons set forth above, the ALJ must avoid rejecting or discounting the opinions of treating physicians because they appear to be based primarily on the patient's self-reported symptoms. Of course, in most cases, this means the ALJ will be required to accept the limitations a claimant's psychologist or psychiatrist lists in answering the type of questionnaires that Drs. Fischer and Burney filled out in this case. But knowing that if the claimant's doctor accepts the claimant's self-reported symptoms, the ALJ must also accept them, absent specific evidence in the record to the contrary, should allow the Commissioner to decide cases more quickly and avoid the substantial expense, effort, and delays that result from judicial review and appeal. In this case,

because the ALJ failed to articulate good reasons for giving Dr. Fischer's opinion partial weight and Dr. Burney's opinion little weight, the Commissioner's decision must be reversed.

Brott requests that the court order that benefits be awarded forthwith instead of remanding the case, given the strength of the evidence and the long history. Despite the history of the case and the evidence of record, this is not an appropriate case for the court to order that benefits be awarded. "[A]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability. This is so because a court does not have the authority to award disability benefits on grounds other than those provided under 42 U.S.C. § 423." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356–57 (7th Cir. 2011) (citations omitted). Here, Brott filed her application in January of 2010, claiming she had been disabled since December of 2003, based in large part on the opinion rendered by a treating psychiatrist in February of 2011, almost three years after her March 31, 2008 last insured date. When, if at all, Brott became disabled during the relevant time period is a determination entrusted to the Commissioner. The case will therefore be remanded.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this order. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   29th   day of March, 2019.

                                      s/ William C. Griesbach
                                      William C. Griesbach, Chief Judge
                                      United States District Court